UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHOWCHILLA ELEMENTARY SCHOOL DISTRICT,<br><br>               Plaintiff,<br><br>v.<br><br>IKON OFFICE SOLUTIONS, INC., an Ohio corporation<br><br>               Defendant. | 1:10-cv-01603 OWW SMS<br><br>**MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND THIRD-PARTY DEFENDANT'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**<br><br>**(DOC. 12, 15)** |
| IKON OFFICE SOLUTIONS, INC., an Ohio corporation<br><br>               Third Party Plaintiff,<br><br>v.<br><br>RAY A MORGAN COMPANY, a California corporation, and TIMONTY KENT, an individual<br><br>               Third Party Defendants. | |

## I. INTRODUCTION

On August 3, 2010, Chowchilla Elementary School District ("Plaintiff") filed a complaint against IKON Office Solutions, Inc. ("Defendant") in the Superior Court of California, County of Madera, seeking a declaration that Plaintiff's contract with Defendant is legally void. Doc. 1, Ex. 3. Defendant removed the action to federal court on September 3, 2010. Doc. 1.

On September 10, 2010, Defendant filed an answer, affirmative defenses, and counterclaim for breach of contract against Plaintiff (Doc. 8) and third party complaint against Ray

1

A Morgan Company ("RMC") and Timothy Kent (together, "Third Party Defendants") (Doc. 9). The third party complaint asserts eleven claims for relief: (1) intentional interference with contractual relations, (2) violation of the Lanham Act, (3) misappropriation of trade secrets, (4) interference with actual and prospective business relations, (5) breach of duty of loyalty, (6) negligent interference with contractual relations, (7) fraud, (8) unfair competition, (9) breach of contract, (10) corporate disparagement, and (11) conspiracy.

Before the court are Plaintiff's motion to dismiss Defendant's counterclaim for breach of contract (Doc. 12) and Third Party Defendants' motion to dismiss claims from Defendant's third party complaint (Doc. 15). Defendant opposes both motions (Docs. 19, 20).

## II.  BACKGROUND

In 2004, Plaintiff entered into a written agreement to lease copiers from Defendant. The parties entered into subsequent amendments to the agreement, including an amendment effective January 21, 2009 ("2009 CESD Lease") (the agreement with all amendments, "CESD Agreement").

The CESD Agreement incorporates by reference the terms of a contract between Defendant and Los Angeles County. Plaintiff alleges that Defendant represented that its contract with Los Angeles County had been properly publicly bid and could be

"piggybacked" with the CESD Agreement under California Public Contract Code § 20118. Defendant alleges that it guaranteed a 20% price discount to Los Angeles County[1], which was part of a public bid process and included in its contracts with Los Angeles County. Plaintiff proceeded with the 2009 CESD Lease without soliciting bids publicly.

On July 1, 2009, Plaintiff sent Defendant a letter requesting a copy of Defendant's contract with Los Angeles County. In response to Plaintiff's request, Defendant provided (1) a letter from Defendant to the County of Los Angeles ("CLA") dated September 16, 2004 ("2004 CLA Letter") (Doc. 8, Ex. B at 1); (2) Defendant's 2004 Invitation to Bid submitted to Los Angeles County ("2004 CLA Lease") (Doc. 8, Ex. B); and (3) Defendant's 2008 Term Contract Award with Los Angeles County ("2008 CLA Contract") (Doc. 8, Ex. C). Plaintiff requested additional documentation to substantiate Defendant's claim that its contract with Los Angeles County could be "piggybacked" with the CESD Agreement. Plaintiff alleges that Defendant never provided additional documentation. Plaintiff concluded that the CESD Agreement violated California Public Contract Code § 20118, and sent Defendant a letter terminating the CESD Agreement as of September 22, 2009.

Third Party Defendant RMC has been Defendant's competitor

---

[1] The 20% price discount was stated in the 2004 CLA Letter (defined below) and not written within the 2004 CLA Lease (defined below).

3

since 1998, and Third Party Defendant Kent was a former major account representative for Defendant. Defendant alleges that Third Party Defendants made misrepresentations to Plaintiff regarding the legality of the CESD Agreement under California Public Contract Code § 20118: the terms and/or status of Defendant's contract with Los Angeles County; that Defendant had unilaterally and improperly altered the terms of its prior leases; and that Defendant had deceived Plaintiff concerning the terms, negotiation and legality of the 2009 CESD Lease. Third Party Defendant Kent resigned employment with Defendant on or about February 18, 2009 and allegedly commenced employment immediately with Third Party Defendant RMC.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). A complaint does not need detailed factual allegations, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss, the court should assume the veracity of "well-pleaded factual allegations," but is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 127 S.Ct. at 1950. "Labels and conclusions"
or "a formulaic recitation of the elements of a cause of action
will not do." *Twombly*, 550 U.S. at 555. "'Naked assertion[s]'
devoid of 'further factual enhancement'" are also insufficient.
*Iqbal*, 127 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).
Instead, the complaint must contain enough facts to state a claim
to relief that is "plausible on its face." *Twombly*, 550 U.S. at
570.

A claim has facial plausibility when the complaint's factual
content allows the court to draw the reasonable inference that
the defendant is liable for the alleged misconduct. *Iqbal*, 127
S.Ct. at 1949. "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." *Id*. (quoting
*Twombly*, 550 U.S. at 556). "A well-pleaded complaint may proceed
even if it strikes a savvy judge that actual proof of those facts
is improbable, and 'that a recovery is very remote and
unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,*
416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).

The Ninth Circuit summarizes the governing standard as
follows: "In sum, for a complaint to survive a motion to dismiss,
the non-conclusory 'factual content' and reasonable inferences
from that content, must be plausibly suggestive of a claim
entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,*

572 F.3d 962, 969 (9th Cir. 2009)(quotations omitted).

If a district court considers evidence outside the pleadings, a Rule 12(b)(6) motion to dismiss must be converted to a Rule 56 motion for summary judgment, and the nonmoving party must be given an opportunity to respond. *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

## IV. DISCUSSION

### A. PLAINTIFF'S MOTION TO DISMISS

Plaintiff moves to dismiss Defendant's counterclaim for breach of contract. The standard elements of a claim for breach of contract are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. *E.g.*, *Abdelhamid v. Fire Ins. Exch.*, 182 Cal.App.4th 990, 999, 106 Cal.Rptr.3d 26 (2010). Plaintiff contends that Defendant's counterclaim fails as a matter of law because the counterclaim lacks the first element of a breach of contract claim: the existence of a contract.

California Public Contracts Code § 20111(a) provides in pertinent part:

> The governing board of any school district, in accordance with any requirement established by that governing board

**6**

pursuant to subdivision (a) of Section 2000, shall let any contracts involving an expenditure of more than fifty thousand dollars ($50,000) for any of the following:

(1) The purchase of equipment, materials, or supplies to be furnished, sold, or leased to the district.

(2) Services, except construction services.

. . .

The contract shall be let to the lowest responsible bidder who shall give security as the board requires, or else reject all bids.

Cal. Pub. Con. Code § 20111. California Public Contracts Code contains exceptions to the public bidding requirement, including the exception in Section 20118:

Notwithstanding Sections 20111 and 20112, the governing board of any school district, without advertising for bids, if the board has determined it to be in the best interests of the district, may authorize by contract, lease, requisition, or purchase order, any public corporation or agency, including any county, city, town, or district, to lease data-processing equipment, purchase materials, supplies, equipment, automotive vehicles, tractors, and other personal property for the district in the manner in which the public corporation or agency is authorized by law to make the leases or purchases from a vendor. Upon receipt of the personal property, if the property complies with the specifications set forth in the contract, lease, requisition or purchase order, the school district may draw a warrant in favor of the public corporation or agency for the amount of the approved invoice, including the reasonable costs to the public corporation or agency for the amount of the approved invoice, including the reasonable costs to the public corporation or agency for furnishing the services incidental to the lease or purchase of the personal property, or the school district may make payment directly to the vendor. Alternatively, if there is an existing contract between a public corporation or agency and a vendor for the lease or purchase of the personal property, a school district may authorize the lease or purchase of personal property directly from the vendor by contract, lease, requisition, or purchase order and make payment to the vendor under the same

7

terms that are available to the public corporation or agency under the contract.

Cal. Pub. Con. Code § 20118. There are no federal cases or citable state cases interpreting California Public Contracts Code § 20118.

Plaintiff contends that the 2009 CESD Lease is void because Defendant's agreements with CLA are void, and therefore: (1) the CLA agreements are not "existing contracts" within California Public Contracts Code § 20118, (2) the 2009 CESD Lease cannot legally be piggybacked to any "existing contract" under California Public Contracts Code § 20118 and therefore does not qualify for the exception to California Public Contracts Code § 20111, and (3) CESD did not publicly bid the 2009 CESD Lease, as required under California Public Contracts Code § 20111. The main issue is whether the 2004 CLA Lease and/or the 2008 CLA Contract are valid "existing contracts."

**1. 2004 Invitation to Bid**

Plaintiff contends that the 2004 CLA Lease is not an "existing contract" between Defendant and CLA within the meaning of California Public Contracts Code § 20118. Plaintiff argues that it is merely Los Angeles County's invitation to bid to potential vendors. Plaintiff points to the following language on page 3, ¶ 26 of the 2004 CLA Lease: "This request is a solicitation only, and is not intended or to be construed as an offer to enter into any contract or other agreement." Doc. 8, Ex.

**8**

B at 10.

Defendant rejoins that the 2004 CLA Lease was an offer from Defendant to Los Angeles County, and Los Angeles County's subsequent decision to use Defendant as its vendor was the acceptance of Defendant's offer.

Once made, a bid made in a competitive bidding process becomes an offer to the public agency involved. The contract is formed and becomes binding and enforceable on acceptance of a valid bid. *Transdyn/Cresci JV v. City & Cnty. of S.F.*, 72 Cal.App.4th 746, 754, 85 Cal.Rptr.2d 512 (1999); *City of Susanville v. Lee C. Hess Co.*, 45 Cal.2d 684, 694-695 (1955); *Berkeley Unified Sch. Dist. of Alameda Cnty. v. James Barnes Constr. Co.*, 112 F.Supp. 396, 399 (N.D. Cal. 1953). Here, the counterclaim alleges that "the 20% or more price term was guaranteed to CLA as part of a public bid process and was incorporated into and made part of IKON's Proposal for Permanent Vendor status in response to the CLA's invitation to bid due on or before October 28, 2004." Doc. 8, § III ¶ 3. The counterclaim also alleges that "IKON's Proposal for Permanent Vendor Status was accepted by CLA . . .." Doc. 8, § III ¶ 4. Because a bid in a competitive bidding process becomes an enforceable contract upon acceptance, these allegations are sufficient to withstand Plaintiff's attack that the 2004 CLA Lease was not an existing contract on a motion to dismiss. Whether the 2004 CLA Lease is an

existing contract and whether the CESD Agreement can be piggybacked on the 2004 CLA Lease are mixed questions of fact and law, subject to proof.

### 2. **2008 Term Contract Award**

Plaintiff contends that the 2008 CLA Contract is not an "existing contract" between Defendant and CLA within the meaning of California Public Contracts Code § 20118 because (1) it does not include critical terms, including price and identification of the equipment subject to the contract; (2) although the 2008 CLA Contract incorporates the terms of the 2004 CLA Lease, the 2004 CLA Lease does not specify a 20% discount; and (3) the 20% discount in the 2004 CLA Letter cannot be incorporated into the 2008 CLA Contract due to the integration clause in Section 24 of the 2004 CLA Lease.[2]

Under California law, a contract will be enforced if it is sufficiently definite (a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached. *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 209, 45 Cal.Rptr.3d 692 (2006) (quoting *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal.App.4th 613, 623, 2

---

[2] The integration clause in the 2004 CLA Lease provides:
24. ENTIRE AGREEMENT MODIFICATION: This Purchase Order and any attachments hereto, constitute the complete and exclusive statement of the parties which supersedes all previous agreements, written or oral, and all communication between the parties relating to the subject matter hereof. This Purchase Order shall not be modified, supplemented, qualified or interpreted by any prior course of dealing between the parties or by any usage of trade. Only County's Purchasing Agent can make changes or modifications by issuance of an official change notice.

Cal.Rptr.2d 288 (1991)). "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Bustamante*, 141 Cal.App.4th at 209 (quoting *Ladas v. Cal. State Auto. Ass'n.*, 19 Cal.App.4th 761, 770, 23 Cal.Rptr.2d 810 (1993); *Robinson & Wilson, Inc. v. Stone*, 35 Cal.App.3d 396, 407, 110 Cal.Rptr. 675 (1973)). "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal.2d 474, 481, 289 P.2d 785 (1955).

Defendant contends that the 2008 CLA Contract is an enforceable contract because (1) it includes all the terms necessary to support a finding that it is an enforceable contract on its own; and (2) it incorporates and applies the terms of the 2004 CLA Lease, and therefore adopts the minimum 20% discount pricing term and full line of equipment and service offerings in the 2004 CLA Lease.

Here, the 2008 CLA Contract specifies in several places that "Photocopier . . . includes all models & multifunctional devices," and that "terms and conditions must be [sic] accordance with Solicitation No. 217470 [i.e., the 2004 CLA Lease]." Doc. 8, Ex. C at 2. The 2008 CLA Contract also specifies that the "price type"

11

is "DISCOUNT." Doc. 8, Ex. C at 1-2. The 2008 CLA Contract incorporates the terms of the 2004 CLA Lease. The 2004 CLA Lease does not include a 20% discount; however, the 2004 CLA Letter accompanying the 2004 CLA Lease states that "IKON Office will always provide a level of discount of at least 20% or below our retail price in order to provide the best price/value relationship to the County of Los Angeles." Doc. 8, Ex. B at 1. The counterclaim alleges that "the 20% or more price term was guaranteed to CLA as part of a public bid process and was incorporated into and made part of IKON's Proposal for Permanent Vendor status . . .." Doc. 8, § III ¶ 3. As Plaintiff notes, the 2004 CLA Lease contains an integration clause. The main issue is whether the 2004 CLA Letter accompanying the 2004 CLA Lease was part of, incorporated into, or may interpret, the 2004 CLA Lease.

The parole evidence rule generally requires that "terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code Civ. Pro. § 1856(a). However, California Code of Civil Procedure § 1856 limits the reach of the parole evidence rule.[3] California

---

[3] California Code of Civil Procedure § 1856 provides:

  (a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

courts have also limited the parole evidence rule; the California

Supreme Court explains in *Pacific Gas & Electric Company v. G.W.*

*Thomas Drayage & Rigging Company*, *Inc.*, 69 Cal.2d 33, 38, 69

Cal.Rptr. 561 (1968):

> In this state, however, the intention of the parties as
> expressed in the contract is the source of contractual
> rights and duties. A court must ascertain and give effect to
> this intention by determining what the parties meant by the
> words they used. Accordingly, the exclusion of relevant,
> extrinsic, evidence to explain the meaning of a written
> instrument could be justified only if it were feasible to
> determine the meaning the parties gave to the words from the
> instrument alone.

"A contract must be so interpreted as to give effect to the

mutual intention of the parties as it existed at the time of

---

(b) The terms set forth in a writing described in subdivision (a) may be
explained or supplemented by evidence of consistent additional terms
unless the writing is intended also as a complete and exclusive
statement of the terms of the agreement.

(c) The terms set forth in a writing described in subdivision (a) may be
explained or supplemented by course of dealing or usage of trade or by
course of performance.

(d) The court shall determine whether the writing is intended by the parties
as a final expression of their agreement with respect to such terms as
are included therein and whether the writing is intended also as a
complete and exclusive statement of the terms of the agreement.

(e) Where a mistake or imperfection of the writing is put in issue by the
pleadings, this section does not exclude evidence relevant to that
issue.

(f) Where the validity of the agreement is the fact in dispute, this section
does not exclude evidence relevant to that issue.

(g) This section does not exclude other evidence of the circumstances under
which the agreement was made or to which it relates, as defined in
Section 1860, or to explain an extrinsic ambiguity or otherwise
interpret the terms of the agreement, or to establish illegality or
fraud.

(h) As used in this section, the term agreement includes deeds and wills, as
well as contracts between parties.

contracting, so far as the same is ascertainable and lawful."
Cal. Civ. Code § 1636. If contractual language is "ambiguous or
uncertain, it must be interpreted in the sense in which the
promisor believed, at the time of making it, that the promisee
understood it." Cal. Civ. Code § 1649.

> The mutual intention to which the courts give effect is
> determined by objective manifestations of the parties'
> intent, including the words used in the agreement, as well
> as extrinsic evidence of such objective matters as the
> surrounding circumstances under which the parties negotiated
> or entered into the contract; the object, nature and subject
> matter of the contract; and the subsequent conduct of the
> parties.

*People v. Shelton*, 37 Cal.4th 759, 767 (2006). "The test of
admissibility of extrinsic evidence to explain the meaning of a
written instrument is not whether it appears to the court to be
plain and unambiguous on its face, but whether the offered
evidence is relevant to prove a meaning to which the language of
the instrument is reasonably susceptible." *Pac. Gas & Elec. Co.
v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37, 69
Cal.Rptr. 561 (1968).

In addition, under California Civil Code § 1642, "several
papers relating to the same subject matter and executed as parts
of substantially one transaction, are to be construed together as
one contract." *Dell Mark, Inc. v. Franzia,* 132 Cal.App.4th 443,
453, 33 Cal.Rptr.3d 694 (2005); Cal. Civ. Code § 1642 ("Several
contracts relating to the same matters, between the same parties,
and made as parts of substantially one transaction, are to be

taken together."). "Whether Civil Code Section 1642 applies in a particular case is a question of fact for the trial court." *Vons Cos., Inc. v. Lyle Parks, Jr., Inc.*, 117 Cal.App.4th 823, 835 n.5, 99 Cal.Rptr.3d 562 (2009). Here, the 2008 CLA Contract expressly incorporates the 2004 CLA Lease. Whether the 2004 CLA Letter, the only document which contains the 20% price discount, is part of the 2004 CLA Lease is a question of fact, subject to proof. Therefore, whether the 2008 CLA Contract is an existing contract and whether the CESD Agreement can be piggybacked on the 2008 CLA Contract focus on the parties' intent, raising questions of fact and law, subject to proof. The counterclaim is sufficient to survive an attack on a motion to dismiss.

   3. **Comparison of 2009 CESD Lease and CLA Agreements**

   Plaintiff further contends that, assuming the 2004 CLA Lease and 2008 CLA Contract are "existing contracts" within the meaning of California Public Contracts Code Section 20118, a comparison of the contracts shows that they are not on the "same terms" and therefore cannot be piggybacked pursuant to Section 20118.

   The counterclaim alleges that "[t]he same offerings of Segment 1 through 6 and Color copiers covered by the 2004 CLA lease applied to all of IKON's copiers and, accordingly, all of the copiers ordered and leased by the CESD in the 2009 CESD Lease." Doc. 8, § III ¶ 8. The counterclaim also alleges that the terms of the 2009 CESD Lease included a price discount in excess

15

of 20%, a price term previously included in an "existing contract" with CLA. *Id.* at ¶ 2. These allegations survive a motion to dismiss.

### 4. **CESD Governing Board Approval**

Plaintiff also argues that Plaintiff can only legally avoid the competitive bid process and enter into a contract directly with a vendor if its governing board finds, based on accurate information, that doing so is in Plaintiff's best interests.

Section 20118 provides:

> ***Notwithstanding Sections 20111 and 20112, the governing board of any school district, without advertising for bids, if the board has determined it to be in the best interests of the district,*** may authorize by contract, lease, requisition, or purchase order, any public corporation or agency, including any county, city, town, or district, to lease data-processing equipment, purchase materials, supplies, equipment, automotive vehicles, tractors, and other personal property for the district in the manner in which the public corporation or agency is authorized by law to make the leases or purchases from a vendor. Upon receipt of the personal property, if the property complies with the specifications set forth in the contract, lease, requisition or purchase order, the school district may draw a warrant in favor of the public corporation or agency for the amount of the approved invoice, including the reasonable costs to the public corporation or agency for the amount of the approved invoice, including the reasonable costs to the public corporation or agency for furnishing the services incidental to the lease or purchase of the personal property, or the school district may make payment directly to the vendor. ***Alternatively, if there is an existing contract between a public corporation or agency and a vendor for the lease or purchase of the personal property, a school district may authorize the lease or purchase of personal property directly from the vendor by contract, lease, requisition, or purchase order and make payment to the vendor under the same terms that are available to the public corporation or agency under the contract.***

16

Cal. Pub. Con. Code § 20118 (emphasis added). It is unclear whether the first clause of Section 20118, i.e., "the governing board of any school district, without advertising for bids, if the board has determined it to be in the best interests of the district," applies to the piggybacking exception in the last sentence of Section 20118, i.e., whether Section 20118's piggyback exception requires (1) approval by the governing board of the school district (the last sentence merely states "school district") and (2) a governing board determination that piggybacking is in the best interests of the district. There are no federal cases or citable California state cases interpreting Section 20118.

In construing statutes, courts must determine and effectuate legislative intent, and look first to the words of the statutes, giving them their usual and ordinary meaning. *Ordlock v. Franchise Tax Bd.*, 38 Cal.4th 897, 909, 44 Cal.Rptr.3d 212 (2006). The legislative history enacting California Public Contracts Code § 20118 states that it is the Legislature's intent to implement more fully the intent behind the people's adoption of an amendment to Section 14 of Article IX of the California Constitution, "which permits the Legislature to authorize the ***governing boards of school districts*** to initiate and carry on any programs, activities, or to otherwise act . . .." Stats. 1987 c. 1452 § 1 (Cal. 2004) (emphasis added). However, the legislative

history adding the last sentence to California Public Contracts

Code § 20118 (the piggybacking exception) does not specify that

governing board action is required:

> (15) Existing law authorizes the **governing board** of a school
> district to grant any public corporation or agency the
> authority to lease or purchase personal property for the
> district, as specified. Existing law also authorizes a
> school district to issue warrants to that public corporation
> or agency for the amount of the approved invoice and all
> reasonable costs of the leased or purchased personal
> property, as specified.
>
> This bill would authorize a **school district** to authorize the
> lease or purchase of personal property directly from a
> vendor by contract, lease, requisition, or purchase order
> and make payment, as specified, for the property directly to
> that vendor if there is an existing contract between a
> public corporation or agency and that vendor for the
> property.

A.B. No. 1967, 2006 Leg. (Cal. 2006) (emphasis added).

    "When one part of a statute contains a term or provision,

the omission of that term or provision from another part of the

statute indicates the Legislature intended to convey a different

meaning." *Cornette v. Dep't of Transp.*, 26 Cal.4th 63, 75, 109

Cal.Rptr.2d 1 (2001). However, courts are required to harmonize

statutes by considering a particular clause or section in the

context of the statutory scheme of which it is a part; provisions

relating to the same subject must be harmonized to the extent

possible. *Ordlock*, 38 Cal.4th at 909; *San Diego Cnty. Emps. Ret.*

*Ass'n v. Cnty. Of San Diego*, 151 Cal.App.4th 1163, 60 Cal.Rptr.3d

601 (2007). California Public Contracts Code § 20111, the general

public bidding statute, requires the governing board of the

school district to act. *See,* Cal. Pub. Con. Code § 20111. The first exception in California Public Contracts Code § 20118 requires the governing board to act and a determination that foregoing advertising for bids is in the best interests of the district. *See,* Cal. Pub. Con. Code § 20118. It would be incongruous for the Legislature to require governing board action for public bidding and for a first exception to the public bidding requirement, but not require such board action for a second exception to the public bidding requirement. Harmonizing the statute as a whole, the first clause of Section 20118 applies to Section 20118's piggyback exception, requiring (1) the governing board of the school district's approval and (2) a governing board determination that piggybacking is in the best interests of the district.

The counterclaim alleges that Lynette Walker, Plaintiff's Director of Business Services, made and initialed the following "purchasing statement":

> I, Lynette Walker as Director of Business Services for Chowchilla Elementary School District, felt it was in the best interest of our school district to exercise the upgrade guarantee in our Ikon Office Solutions contract. In addition, in using the County of Los Angeles piggyback provision it is in the best interest of Chowchilla Elementary School District to use piggyback bids whenever available to save time and resources of the District. In this case with Ikon Office Solutions having the piggyback contract with the County of Los Angeles, Chowchilla Elementary School District has elected to exercise that and go forth and execute a contract renewal, that includes the County of Los Angeles pricing with Ikon Office Solutions."

Doc. 8, Ex. D. The counterclaim does not allege that (1) the CESD's governing board determined the 2009 CESD Lease was in CESD's best interest or authorized the 2009 CESD Lease, or (2) the CESD's governing board delegated authority to Ms. Walker to authorize the 2009 CESD Lease on its behalf. Without these allegations, the 2009 CESD Lease cannot qualify for the exception under California Public Contracts Code § 20118, and is void as a matter of law.

Plaintiff's motion to dismiss Defendant's counterclaim for breach of contract is GRANTED. Defendant is GRANTED LEAVE TO AMEND the counterclaim for breach of contract.

**B. THIRD PARTY DEFENDANT'S MOTION TO DISMISS**

**1. First Claim: Intentional Interference with Contractual Relations**

The elements of a claim for intentional interference with contractual relations are:

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Quelimane Co., Inc. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 55, 77 Cal.Rptr.2d 709 (1998)(quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1 (1990)).

Third Party Defendants move to dismiss Defendant's first claim for intentional interference with contractual relations for

the same reason and arguments Plaintiff propounds in its motion to dismiss: that the contract which forms the basis of Defendant's claim is void as a matter of law.

For the same reasons in the discussion of Plaintiff's motion to dismiss Defendant's counterclaim for breach of contract, Third Party Defendants' motion to dismiss Defendant's claim for intentional interference with contractual relations is GRANTED. Defendant is GRANTED LEAVE TO AMEND the claim for intentional interference with contractual relations.

### 2. Sixth Claim: Negligent Interference with Contractual Relations

Third Party Defendants move to dismiss Defendant's sixth claim for relief for negligent interference with contractual relations. Citing *Davis v. Nadrich*, 174 Cal.App.4[th] 1, 9, 94 Cal.Rptr.3d 414 (2009), Third Party Defendants contend that there is no cause of action for negligent interference with contractual relations in California and that California recognizes the functionally indistinguishable claim for negligent interference with prospective economic advantage.

In California, there is no cause of action for negligent interference with contract; however, there is a cause of action for negligent interference with prospective economic advantage. *Id*. The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that:

(1) an economic relationship existed between the plaintiff
and a third party which contained a reasonably probable
future economic benefit or advantage to plaintiff; (2) the
defendant knew of the existence of the relationship and was
aware or should have been aware that if it did not act with
due care its actions would interfere with this relationship
and cause plaintiff to lose in whole or in part the probable
future economic benefit or advantage of the relationship;
(3) the defendant was negligent; and (4) such negligence
caused damage to plaintiff in that the relationship was
actually interfered with or disrupted and plaintiff lost in
whole or in part the economic benefits or advantage
reasonably expected from the relationship.

*N. Amer. Chem. Co. v. Superior Court of L.A. Cnty.*, 59 Cal.App.4[th]
764, 786, 69 Cal.Rptr.2d 466 (1997). Negligent interference may
be asserted only where the defendant owes the plaintiff a duty of
care. *Lange v. TIG Ins. Co.*, 68 Cal.App.4th 1179, 1187, 81
Cal.Rptr.2d 39 (1998). The following criteria are analyzed to
determine whether a defendant owes a duty of care to a plaintiff:

(1) the extent to which the transaction was intended to
affect the plaintiff, (2) the foreseeability of harm to the
plaintiff, (3) the degree of certainty that the plaintiff
suffered injury, (4) the closeness of the connection between
the defendant's conduct and the injury suffered, (5) the
moral blame attached to the defendant's conduct and (6) the
policy of preventing future harm.

*J'Aire Corp v. Gregory*, 24 Cal.3d 799, 804, 157 Cal.Rptr. 407
(1979).

The third party complaint sufficiently alleges a cause of
action for negligent interference with prospective economic
damages. Third Party Plaintiffs, with the knowledge of
Defendant's five-year lease with CESD, executed a scheme to
persuade CESD that it could lawfully breach the 2009 CESD Lease,

22

with the objective of replacing Defendant as CESD's vendor and appropriating that copying business. Doc. 9, § III, ¶¶ 17-20, 101-102. The third party complaint alleges that these actions have injured Defendant. *Id.* at ¶¶ 21, 104.

Third Party Defendants' motion to dismiss Defendant's sixth claim is GRANTED. Defendant is GRANTED LEAVE TO AMEND the sixth claim for negligent interference with contractual relations consistent with this decision.

## V. CONCLUSION

For the reasons stated:

1. Plaintiff's motion to dismiss the counterclaim is GRANTED. Defendant is GRANTED LEAVE TO AMEND.

2. Third Party Defendant's motion to dismiss is GRANTED in part and DENIED in part, as follows:

    a. Third Party Defendant's motion to dismiss Defendant's first claim is GRANTED. Defendant is GRANTED LEAVE TO AMEND its first claim.

    b. Third Party Defendant's motion to dismiss Defendant's sixth claim is GRANTED. Defendant is GRANTED LEAVE TO AMEND the sixth claim.

3. Defendant shall submit a proposed form of order consistent with this memorandum decision within five (5) days of electronic service of this memorandum decision. Any amendments shall be filed twenty (20) days thereafter. The

respective responding parties shall have twenty (20) days to respond.

SO ORDERED.

DATED:    February 22, 2011

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge